## THE THOMAS W. ROGERS.

(Circuit Court of Appeals, Second Circuit. June 12, 1913.)

No. 242.

MARITIME LIENS (§ 28*)—REPAIRS—REPRESENTATION OF OWNERSHIP BY CHARTERER.

A charterer in possession of a vessel under a charter which is in fact a conditional bill of sale, the title to pass on full payment and which represents itself as owner, has power to create a lien thereon for repairs.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 46, 47; Dec. Dig. § 28.*]

Appeal from the District Court of the United States for the Eastern District of New York; Thomas I. Chatfield, Judge.

Suit in admiralty by the John W. Sullivan Company against the steam tug Thomas W. Rogers; John C. Rogers, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 197 Fed. 772.

On appeal from a decree of the District Court for the Eastern District of New York in favor of the libelant for $913.31 for repairs furnished the steam tug Thomas W. Rogers, owned by the claimant John C. Rogers. At the time in question the tug was chartered to the Waterfront Company, a New Jersey corporation.

James J. Macklin, of New York City (De Lagnel Berier, of New York City, of counsel), for appellant.

Alexander & Ash, of New York City (Mark Ash and William Ash, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The tug Rogers, while under charter by the owner John C. Rogers, to the Waterfront Improvement Company, a New Jersey corporation, had $913.31 worth of repairs put upon her by the libelant, the Sullivan Company, for which sum the tug was libeled. The District Court held that the libelant was entitled to recover. The charterer made default and the tug was taken back into the possession of the owner. There was sufficient proof to show that the repairs were ordered by the improvement company and that the work was done on the credit of the vessel. The repairs were made in New York by a New York corporation. The New Jersey corporation represented itself to be the owner and it certainly was in possession of the vessel at the time the repairs were ordered. The repairs went to enhance the value of the vessel. They were placed thereon upon the order of Martin, the president of the New Jersey corporation, after stating that he had bought the boat. The district judge is correct in saying that the charter party was in fact a conditional bill of sale, the title to pass on the payment of the last installment.

The charterer had power to create a lien for repairs. The George Farwell, 103 Fed. 882, 43 C. C. A. 373.

There can be little doubt that the Waterfront Company was in a position to bind the Rogers for repairs. All of the bills for repairs were made out to the "Tug T. W. Rogers and Owners Waterfront Improvement Co." No complaint was made of the form of the bills, on the contrary, the improvement company retained them and, in February, 1911, entered into an agreement with the libelant in which it is recited that the John W. Sullivan Co. has a lien against the tug Thomas W. Rogers amounting in the aggregate to $778.45, which it agrees to pay in weekly installments of $100. The agreement concludes as follows:

"Nothing herein contained shall be construed as a waiver by the John W. Sullivan Co. and its heirs aforesaid for said claims for repairs against said vessels, but the same shall remain unimpaired against said vessels until the full amounts of said claims are paid."

We have no doubt that the repairs were made upon the credit of the tug with the full knowledge and assent of both parties and that a valid lien was created.

It is said that the act of Congress of June 23, 1910 (36 Stat. 604, c. 373 [U. S. Comp. St. Supp. 1911, p. 1191]), relating to repairs on vessels and providing for a lien upon a vessel, whether foreign or domestic, for repairs ordered by the managing owner, ship's husband, master or any person to whom the management of the vessel at the port of supply is intrusted, is unconstitutional. If we assume this to be true, it does not aid the appellant in the present controversy. The act enlarges the scope of the lien law but the libelant had a lien prior to the date of its passage and would have had a lien after that date if the act had never been passed. Upon what theory the law can be held unconstitutional we are at a loss to conjecture, but we forbear to decide the point, for the reason that the act creating this court provides that an appeal or writ of error in any case in which the constitutionality of any law of the United States is drawn in question must be taken direct to the Supreme Court.

The decree is affirmed.